UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAE ANDERSON BULLARD,
and ROCKWOOD W. BULLARD, III,

        Plaintiffs,

v.

Case No. 09-cv-12839
HON. GEORGE CARAM STEEH

INDYMAC BANK FSB, a federal
banking corporation, *et al.*,

        Defendants.
_____/

<u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION TO DISMISS SECOND AMENDED
COUNTER COMPLAINT AND DISMISSING ACTION</u>

## I.  INTRODUCTION[1]

Before the court is a supplemental motion for summary judgment and to dismiss second amended counter complaint filed by plaintiffs.[2]  Also before the court is defendant, One West Bank's,[3] motion for summary judgment.

---

[1] Rae Anne Bullard's Chapter 7 bankruptcy proceeding was reopened on May 22, 2010.  Thus, defendant's fraud claim is cognizable in the bankruptcy action to determine whether Mrs. Bullard fraudulently claimed an exemption and whether the subject mortgage is dischargeable.  Thus, the court dismisses defendant's fraud claim, count I, without prejudice.

[2] On August 2, 2010, plaintiffs filed a motion for summary judgment and to dismiss amended counterclaim.  Subsequently, on August 9, 2010, Defendant OneWest Bank filed a second amended counter complaint and plaintiffs filed their response in opposition entitled "supplemental motion for summary judgment and to dismiss second amended counter complaint."  Therefore, the court **denies as moot** plaintiffs' August 2, 2010 motion for summary judgment [#44] and to dismiss amended counterclaim.

[3] Defendant IndyMac Bank FSB is defendant OneWest Bank's predecessor.

## II. FACTUAL BACKGROUND

The property that is the subject of this dispute is known as 6765 Ridgewood, Clarkston, Michigan 48346 (property). Plaintiff Rae Anne Bullard first acquired the property in April of 1998. She subsequently conveyed title to the property to herself and her parents, Acie G. Anderson, Jr. and Beverly J. Anderson. On November 20, 2003, she and her parents quit claimed the property back to Rae Anne Anderson, a single woman.

On December 6, 2003, Rae Anne Anderson and Rockwood W. Bullard, III, were married. About this same time, plaintiffs began the process of building a house. The property remained titled in Mrs. Bullard's name only. In order to build the house, Mrs. Bullard obtained a loan form IndyMac Bank. On or about January 16, 2004, plaintiffs borrowed $337,000.00 secured by a mortgage on the property (first mortgage). The first mortgage was subsequently modified on July 9, 2004 to increase the amount to $400,000.00.

The cost of construction of the home increased, requiring plaintiffs to take out another loan to finance the construction. On March 5, 2005, plaintiffs obtained a loan from Quicken Loans in the amount of $100,000.00, secured by a second mortgage on the property (second mortgage). The second mortgage was executed by both plaintiffs. Plaintiffs later refinanced the second mortgage, borrowing $150,000.00 from Quicken Loans secured by a third mortgage on the property (third mortgage). The third mortgage paid off the second mortgage. On May 24, 2006, plaintiffs obtained a larger loan from Quicken Loans in the amount of $250,000.00, also secured by a mortgage on the property (fourth mortgage). The fourth mortgage paid off the third mortgage.

In the fall of 2006, Mr. Bullard began negotiating with defendant, IndyMac Bank, to combine the first and fourth mortgages into a single mortgage. Mr. Bullard claims that at

the outset he made it clear that the loan was to be "no doc, stated income" loan based solely on Mrs. Bullard's credit. On October 16, 2006, Mrs. Bullard submitted a loan application to IndyMac indicating that her monthly income was $19,000.00.[4] However, Mrs. Bullard testified at her deposition that around the Labor Day holiday in 2006 she stopped working in order to raise her two grandchildren, who came to live with her and her husband. Plaintiffs characterize the $19,000.00 monthly income figure stated on the loan application as the gross revenues of the their law firm. On November 27, 2006, Mr. Bullard agreed in writing to change the loan from a "no doc, stated income" loan to a "no income, no asset" loan, or "NINA" loan.[5] Plaintiffs paid a fee of roughly $5,400.00 so that their loan would be treated as a NINA loan. Plaintiffs claim that they did not expect to be judged on the basis of their income once the loan was reclassified.

The loan closing was scheduled for Friday, December 1, 2006 at plaintiffs' law offices in Clarkston, Michigan. The loan documents were prepared by IndyMac, and the preprinted form documents only had a space for Mrs. Bullard's signature, stating "Mortgage must be signed as follows: Rae Anderson-Bullard." The closing was conducted by a "mobile notary," Ms. Akeera Nelson. Despite the instructions to obtain only the signature of Mrs. Bullard, Ms. Nelson insisted on obtaining Mr. Bullard's signature as well.

> Q. Now, there is another signature on the line and another date, for Mr. Bullard with his date. Do you know anything about that?

---

[4] At the time of the application, plaintiffs had not filed their 2005 income tax returns.

[5] A "NINA" loan "is a term used in the United States mortgage industry to describe one of many documentation types which lenders may allow when underwriting a mortgage. NINA programs are reserved for the most credit-worthy of borrowers. This means, among other criteria, a satisfactory mortgage history paid As Agreed (no mortgage lates in the last 24 months), a minimum credit score of 660 and a Loan to Value ratio of no more than 75%. *See* Dkt. #44, fn. 5.

> A. Yes. I had Mr. Bullard sign because Michigan is a spousal state. Her name is the only one on there, and I asked Mr. Bullard when he signed as well, because his name was not included, but it needed to be on here, so I asked him to sign.
> Q. Did he sign?
> A. Yes he did.
> Q. Now, you've shown up at the closing with specific instruction to get Mrs. Bullard only to sign; correct?
> A. Yes.

*See* Nelson Tr. at 32-33. After the closing on Friday, December 1, 2006, Ms. Nelson forwarded the signed documents to the closing agent, National Real Estate Investment Services. She was told that the forms were incorrect and was directed to return to meet with Mrs. Bullard and have the documents signed only by Mrs. Bullard. This meeting occurred on December 4, 2006 at Mrs. Bullard's office. Mrs. Bullard signed another mortgage document on this date.

From December of 2006 through December of 2008, the Bullards made their monthly mortgage payments. In January of 2009, they stopped making their mortgage payments and have not made a payment since December of 2008. The Bullards sought a modification of their loan, but IndyMac refused.

Mrs. Bullard filed for bankruptcy and on May 27, 2009, Mrs. Bullard's bankruptcy was discharged, which included the IndyMac promissory note.[6] In June 2009, IndyMac commenced a non-judicial foreclosure and scheduled a sheriff's sale for July 21, 2009.

---

[6] Mrs. Bullard claimed in the Bankruptcy proceeding that the property at issue in this litigation was subject to a mortgage held by OneWest, and based on this information the Trustee took no action to claim the property as an asset of the estate. A day after Mrs. Bullard's bankruptcy was discharged, Mrs. Bullard filed a Declaration Concerning Debtor's Schedules to amend her bankruptcy schedules B- Personal Property and C-Property Claimed as Exempt–to state that she had potential claims against OneWest. She did not, however, amend schedule D-Creditors Holding Secured Claims- to indicate that the property was no longer subject to the mortgage, as she argues before this court.

Plaintiffs' complaint was filed on July 20, 2009. Counsel for the parties agreed to adjourn the sheriff's sale and plaintiffs' motion for restraining order was not heard by the court. Plaintiffs' original complaint contained thirteen counts, in addition to the request for temporary and permanent injunctive relief, count XIII, they alleged Truth in Lending violations (TILA), counts III and IV, Real Estate Settlement Procedures Act violations (RESPA), count V, fraud, counts VIII and IX, violations of Michigan Mortgage Loan Act and Mortgage Foreclosure Law, counts X and XI, among other allegations. In their verified complaint and sworn deposition testimony they claimed numerous forgeries and alterations to the loan documents, and also claimed that Mr. Bullard never participated in the December 1, 2006 closing on the fifth mortgage.[7]

On July 23, 2010, plaintiffs filed a first amended complaint containing a sole count, specifically, mortgage invalidity pursuant to MICH. COMP. LAWS § 600.6023(1)(h). Plaintiffs' new theory of the case is that even though Mr. Bullard signed the December 1, 2006

---

[7] Plaintiffs' verified complaint alleged that Mr. Bullard did not sign a mortgage (Dkt. #1, ¶ 22) and that Mrs. Bullard did not sign any documents on December 4, 2006 (*Id.*, ¶ 40). However, plaintiffs have now conceded that Mr. Bullard did sign the December 1, 2006 mortgage documents and Mrs. Bullard signed mortgage documents on the December 4, 2006. Their memories appear to have changed after the deposition of Ms. Nelson.

During Ms. Nelson's May 21, 2010 deposition, defendant proceeded to go through each of the documents that plaintiffs claimed had been altered or forged by Ms. Nelson or others. Ms. Nelson testified that she had not changed the dates or otherwise altered the documents in any way. Confronted with this testimony, part way through Ms. Nelson's testimony, Mr. Frank, plaintiffs' counsel, stated that:

Mr. Frank: I don't want you to waste the time asking her questions you've already asked her or that I asked her, because I'm willing to live with the fact that she dated things correctly, she appeared when she said she appeared, people signed in front of her that she says signed in front of her . . .
Mr. Asher: You're accepting her testimony as the truth in this case and you're not disputing that as being the truth?
Mr. Frank: Right. Right.

mortgage documents, that this mortgage was superseded by the second mortgage signed solely by Mrs. Bullard on December 4, 2006. Plaintiffs argue that the December 4, 2006 mortgage is invalid and unenforceable because it lacks the signature of Mr. Bullard. They contend that MICH. COMP. LAWS § 600.60239(1)(h) and the Michigan Land Title Standard 5.3[8] require a valid non-purchase money mortgage on an interest in land to contain the signature of both spouses.

On August 9, 2010, defendant filed a second amended counterclaim, alleging, count I; fraudulent misrepresentation and fraud in the inducement, count II; equitable mortgage, count III; declaratory judgment–validity of December 1, 2006 mortgage, Count IV; declaratory judgment–validity of December 4, 2006 mortgage, count V; reformation.

### III. ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See

---

[8] Standard 5.3 states:

Mortgage of Homestead Land

Standard:   A married man, and since April 17, 1984, a married woman, cannot, without the signature of the other spouse, create a valid mortgage upon any interest in the land which constitute their homestead, except by a mortgage given to secure all or part of the purchase price.

Comment:   The committee expresses no opinion as to whether MCL 600.6023(1)(h) conflicts with Article 10, Sec. 1 of the Michigan Constitution of 1963.

-6-

*Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be

evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because the December 1, 2006 mortgage is valid because Michigan law does not require a mortgage to be recorded. However, even if the December 1, 2006 mortgage is found to be invalid, the December 4, 2006 mortgage is valid and enforceable because common law curtesy has been abolished in Michigan and a married woman is allowed to mortgage her separate property as though she were not married. In the alternative, defendant argues that it is entitled to an equitable mortgage on the property.

Plaintiffs ask this court to declare that the December 1, 2006 mortgage is invalid because it was never accepted, but expressly rejected by Defendant, which required that it be replaced by the December 4, 2006 mortgage executed only by Mrs. Bullard. Plaintiffs further ask this court to declare that the December 4, 2006 mortgage is invalid because only Mrs. Bullard signed it, and this violates the homestead rights of Mr. Bullard. Plaintiffs seek a permanent injunction restraining defendant from foreclosing on the real property at issue in this matter, and to execute and record a discharge of any lien or encumbrance on this property. Plaintiffs seek this result after having had their debt on defendant's mortgage discharged in bankruptcy. In other words, since Mrs. Bullard's debt of $710,000.00 from the fifth mortgage has been discharged in bankruptcy, and because there is no valid mortgage on the property, plaintiffs seek to keep their home without having to pay for it.

### I. Is the December 1, 2006 mortgage signed by both the Bullards valid and enforceable?

Plaintiffs claim that the December 1, 2006 mortgage is not valid because it was not recorded and was expressly rejected by defendant, which required that another mortgage

be executed, the December 4, 2006 mortgage. Without citing to any case law, plaintiffs theorize that the December 4, 2006 mortgage supersedes the December 1, 2006 mortgage. Plaintiffs rely on the fact that the December 1, 2006 mortgage was not part of IndyMac's file, and was abandoned by IndyMac and preserved only by IndyMac's agent, National Real Estate Information Services. Plaintiffs also argue that the December 1, 2006 mortgage was rejected by IndyMac because it only recorded, and attempted to foreclose on, the December 4, 2006 mortgage.

Contrary to plaintiffs' argument, the December 1, 2006 mortgage is valid even though it was not recorded. Michigan Compiled Laws § 565.154 states that:

> A mortgage of lands that is worded in substance as follows: "A.B. mortgages and warrants to C.D., (here describe premises) to secure the repayment of" (here describe the indebtedness or obligations the mortgage secures) and is signed by the grantor, is a valid and enforceable mortgage to the grantee and the grantee's heirs, assigns, successors, and personal representatives with warranty from the grantor and the granter's legal representatives, of marketable title in the grantor, free from prior incumbrances. If the indebtedness or obligations secured are described generally, such as "all indebtedness that A.B. now and in the future owes to C.D.", and if the words "and warrant" are omitted from the form, the mortgage is valid and enforceable, but without warranty.

MICH. COMP. LAWS § 565.154. "In Michigan . . . an unrecorded conveyance, including a mortgage, 'shall be void as against any subsequent purchaser in good faith and for a valuable consideration.'" *United States v. Certain Real Property Located at 750 Drive*, 800 F. Supp. 547, 550 (E.D. Mich. 1992) (citing MICH. COMP. LAWS § 565.29; *Michigan Fire & Marine Ins. Co. v. Hamilton*, 284 Mich. 417, 419 (1938)) (rejecting the government's argument that the claimants lacked an ownership interest in the property for their failure to record the mortgage because the government was not a subsequent purchaser under Michigan law). An unrecorded, signed mortgage that specifies the loan amount, interest rate, payment schedule and security satisfies Michigan law governing conveyances of real property. *Id.* The December 1, 2006 mortgage signed by both plaintiffs specifies the loan

amount, interest rate, payment schedule, and security. Thus, unrecorded mortgages in Michigan are void as against subsequent purchasers in good faith and for a valuable consideration, but valid as against those who are not subsequent purchasers. MICH. COMP. LAWS § 565.29; *Michigan Fire & Marine Ins. Co. v. Hamilton*, 284 Mich. 417, 419 (1938); *United States v. Certain Real Property Located at 750 Drive*, 800 F. Supp. at 551. Here, plaintiffs are not subsequent purchasers trying to void the mortgage, therefore the December 1, 2006 mortgage is valid and enforceable.

### II. Is the December 4, 2006 mortgage signed by Mrs. Bullard valid and enforceable?

Even if the December 1, 2006 mortgage is invalid and unenforceable, the December 4, 2006 mortgage is valid and enforceable. In Michigan, a married woman who owns property solely in her own name may mortgage the property as though she were single. *North Ottawa Community Hosp. v. Kieft*, 457 Mich. 394 (1998). MICH. COMP. LAWS § 557.21 states:

> If a woman acquires real or personal property before marriage or becomes entitled to or acquires, after marriage, real or personal property through gift, grant, inheritance, devise, or other manner, that property is and shall remain the property of the woman and be a part of the woman's estate. She may contract with respect to the property, sell, transfer, mortgage, convey, devise, or bequeath the property in the same manner and with the same effect as if she were unmarried. The property shall not be liable for the debts, obligations, or engagements of any other person, including the woman's husband, except as provided by this act.

MICH. COMP. LAWS § 557.21(1).

Plaintiffs reliance on Michigan Compiled Laws § 600.6023(1)(h) is misplaced. Michigan Compiled Laws § 600.6023 is part of Chapter 60 of the Revised Judicature Act of 1961, which governs enforcement of judgments. Michigan Compiled Laws § 600.6023 exempts certain property of a debtor from levy and sale, including homesteads. A mortgage signed by the spouse of the judgment debtor is exempted from levy and sale. MICH. COMP.

LAWS § 600.6023(1)(h).  This statute does not apply because it applies to the enforcement of judgment liens, not mortgages.  Mortgages are governed by Chapters 31 and 32 of the Revised Judicature Act of 1961.  Furthermore, Mrs. Bullard is not a judgment debtor.  Additionally, plaintiffs reliance on Michigan Land Title Standard 5.3, which cites MICH. COMP. LAWS § 600.6023(1)(h), is also misplaced because this is not a statute.  The commentary to this standard states that "it expresses no opinion as to whether MCL § 600.6023(1)(h) conflicts with Article 10, Sec. 1 of the Michigan Constitution of 1963."  The December 4, 2006 mortgage signed by Mrs. Bullard and recorded with the Oakland Country Register of Deeds is therefore valid and enforceable.

Defendant also argues that the court should impose an equitable mortgage on the property if the court concludes that both the December 1, 2006 mortgage and December 4, 2006 mortgage are invalid.  As the court concludes that both are valid and enforceable, the court need not address defendant's alternate argument concerning the propriety of granting an equitable mortgage.

The court also notes that even if both the December 1, 2006 mortgage and the December 4, 2006 mortgage are invalid and there was no basis to impose an equitable mortgage, plaintiffs' first amended complaint would nonetheless be subject to dismissal based on the doctrine of judicial estoppel.  The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *White*, 617 F. 3d at 476.  The doctrine of judicial estoppel is invoked to "preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship."  *Id.* (citing *Browning v. Levy*, 283 F. 3d 761, 775 (6th Cir. 2002).  "Judicial estoppel is an equitable doctrine to be invoked by this court at its discretion."  *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d

447, 453 (6th Cir. 2005). Courts must apply the doctrine cautiously in order "to avoid impinging the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks v. CBSK Fin. Group, Inc.*, 385 F. 3d 894, 897 (6th Cir. 2004). Judicial estoppel is inappropriate where conduct amounts "to nothing more than mistake or inadvertence." *Browning*, 283 F. 3d at 776. Inadvertence may be found where a debtor lacks knowledge of the factual basis supporting the undisclosed claims or where the debtor has no motive for concealment. *Id.*; *see also, Eubanks*, 385 F. 3d at 899.

In the bankruptcy context, the court will apply judicial estoppel when a party "(1) assert[s] a position that is contrary to one that the party has asserted under oath in a prior proceeding, [and] where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition" and (3) the omission did not result from mistake or inadvertence. *White*, 617 F. 3d at 478.

All of the *White* factors are present here. The Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). "It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis in original). Moreover, "[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.*

Plaintiffs' pursuit of the "invalid mortgage" claim is without question "a position that is contrary to" the position asserted in the bankruptcy court. In Mrs. Bullard's initial schedules filed on February 11, 2009, she failed to disclose the potential claim against

-12-

defendant that she asserts here. *See* Case Number 09-43623, Dkt. #21. Rather, she indicated that the property was subject to a mortgage held by defendant. *See* Def.'s Mot. for Summ. J., Ex. 16-Voluntary Petition, Schedule D-Creditors Holding Secured Claims. She claimed that the property was encumbered and the debt owed to defendant exceeded the market value of the property. Further, she failed to disclose this potential claim at the debtor's § 341 meeting with creditors. Based on Mrs. Bullard's representation, the trustee filed his report of trustee in no-asset case and took no action to claim the property as an asset of the estate. "[P]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." *Lewis*, 141 Fed. App'x at 425 (citing *Eubanks*, 385 F.3d at 898).

It is also apparent that the bankruptcy court adopted Mrs. Bullard's position when it discharged her debt to defendant on May 27, 2009. Further, there is no evidence that this omission was due to "mistake or inadvertence." The day after her bankruptcy was discharged, Mrs. Bullard amended her schedules to add the potential claim against defendant listing the amount of the claim as "unknown." She did not advise the trustee or the bankruptcy court that the property was no longer subject to the mortgage and failed to amend Schedule D- Creditors Holding Secured Claims.

Additionally, plaintiffs' verified complaint reveals that, at least as of April 2009, she became aware of the potential claim that the mortgage was invalid. *See* Dkt. No. 1, ¶ 37. Further, at her deposition, Mrs. Bullard admitted that by the time she filed the complaint in July of 2009, she was aware of her claim against defendant. *See* Def.'s Mot. for Summ. J., Ex. 15. In explaining why she did not further amend her schedules in July when she filed the present action, she testified that "[w]e raised the issue and we were given advice by attorneys who practice in the bankruptcy courts that we had done what we needed to

do." *Id.* at 161-62.  Thus, Mrs. Bullard had knowledge of the facts supporting her claim prior to the discharge, as well as had a motive to conceal it.  By concealing her potential claim against defendant, the trustee did not claim the property as an asset of the estate. Lastly, plaintiffs cannot establish an absence of bad faith, which requires a finding that the plaintiffs took "affirmative steps to fully inform the trustee and the bankruptcy court of the action."  *See Eubanks*, 385 F.3d 895.  Here, Mrs. Bullard did not take any action to fully inform the trustee or the bankruptcy court.  Rather, the trustee did not learn of the allegations raised in this action until May 18, 2010.  *See* Case Number 09-43623, Dkt. #21. Based on the foregoing, plaintiffs' first amended complaint is dismissed.

### C. Plaintiffs' Motion for Summary Judgment and Motion to Dismiss Second Amended Counter Complaint

The Bullards move for summary judgment on the first amended complaint.  For the reasons stated above, the Bullards are not entitled to summary judgment on the first amended complaint.  Further, the Bullards are also not entitled to summary judgment on OneWest's second amended counter complaint.  Because the court concludes that both the December 1, 2006 and December 4, 2006 mortgages are valid and enforceable, OneWest is entitled to judgment in its favor on count III; declaratory judgment – validity of December 1, 2006 and on count IV; declaratory judgment – validity of the December 4, 2006 mortgage.  Further, both count II, for equitable mortgage, and count V, for reformation, are moot.  Thus, the only remaining claim is OneWest's fraudulent misrepresentation and fraud in the inducement claim concerning Mrs. Bullard's alleged misrepresentation of her monthly income on her loan application.

The bankruptcy court reopened the Bullards' case when it granted the Trustee's motion to reopen due to the Trustee receiving notice of the action pending before this court. *See* Case Number 09-43623, Dkts. #21 - 22.  In his motion, the Trustee indicated that the

-14-

"debtor failed to disclose a potential cause of action she possessed against Indymac Bank FSB and others . . . relating to mortgages held by them on Debtor's real property." Id., Dkt. #21 at ¶ 5. Thus, the bankruptcy judge reopened the case so that the Trustee could determine "whether the Debtor fraudulently claimed her exemption in the Cause of Action, whether she has an exemption at all and to determine whether the Cause of Action is an asset to be administered by the Trustee." Id. at ¶ 9. The court therefore concludes that OneWest's fraud claim is cognizable in the bankruptcy action in order to determine whether Mrs. Bullard fraudulently claimed an exemption and whether her mortgage on the subject property is dischargeable. The court dismisses OneWest's fraud claim without prejudice.

## IV. CONCLUSION

Plaintiffs' motion for summary judgment and to dismiss counterclaim [#44] is DENIED AS MOOT.

Defendant OneWest Bank's motion for summary judgment [#45] is GRANTED.

Plaintiffs' supplemental motion for summary judgment is DENIED and plaintiffs' motion to dismiss second amended counter complaint [#54] is DENIED.

This cause of action is dismissed with prejudice, except for OneWest's fraudulent misrepresentation and fraud in the inducement claim, count I of the second amended counter complaint, which the court dismisses without prejudice.

So Ordered.

Dated: September 17, 2012

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 17, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk